1

2

**— LAW OFFICE OF —**
**JOSHUA BLACK**
PLC

3

Joshua C. Black, #032241
Law Office of Joshua Black, PLC

4

2999 N 44th St, Ste 308
Phoenix, AZ 85018

5

(623) 738-2225 (p) • (623) 471-6516 (f)
josh@azemploymentlawyer.com

6

*Attorneys for Plaintiff*

7

## UNITED STATES DISTRICT COURT

8

## DISTRICT OF ARIZONA

9

**Matthew Thomas**, an individual,

10

Plaintiff,

11

vs.

12

**BNSF Railway Company**, a Delaware
corporation,

13

14

Defendant.

15

**No.**

**Complaint and Jury Trial
Demand**

16      Plaintiff Matthew Thomas ("Matthew"), by and through undersigned counsel,

17  alleges the following:

18                                    **Nature of Action**

19      1.      This is an action under the Federal Rail Safety Act, codified at 49 U.S.C. §

20  20109 and Title I and Title V of the Americans with Disabilities Act of 1990, to correct

21  unlawful employment practices perpetrated against Matthew based on his status as a

22  whistleblower and his disabilities.  This action is brought to provide appropriate relief to

23

24  Matthew who was adversely affected by such practices.

25      2.      Matthew spoke up about illegal activity by Defendant BNSF Railway

26  Company ("BNSF") and was retaliated against; Matthew was also subjected to hostile

treatment by BNSF and was denied benefits and protections of his job because of his disabilities.

3.     As stated with greater particularity below, Matthew alleges BNSF discriminated against him because of his status as a whistleblower under the FRSA, and because of his disabilities in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a).

**Jurisdiction and Venue**

4.     The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331, and 1332. This action is authorized and instituted pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109, and the Americans with Disabilities Act of 1990 ("ADA"), as amended.

5.     The unlawful employment practices alleged herein were being committed in whole or in part within the jurisdiction of the United States District Court for the District of Arizona.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Plaintiff resides in the District of Arizona and Defendant conducts significant business in the district and has sufficient contacts such that the venue is proper.

**Relevant Procedural Background**

7.     The complaint is timely as Plaintiff filed a complaint with the Secretary of Labor on December 23, 2020, alleging BNSF had violated his rights afforded under 49 U.S.C. § 20109.  No decision has been rendered by the Secretary of Labor, sufficient time has passed, and the delay is not due to any bad faith by Plaintiff.

8.     Plaintiff also timely filed a Charge of Discrimination with the EEOC on April 27, 2021.  The EEOC issued a Notice of Right to Sue letter on October 25, 2021.

9.      Plaintiff brings this action within 90 days of the issuance of the Notice of Right to Sue.

**Parties**

10.     Plaintiff Matthew Thomas ("Matthew") resides in Maricopa County, Arizona.

11.     Matthew began his employment with BNSF on or about April 29, 2013.

12.     At all relevant times herein, Matthew was an "employee" of BNSF within the meaning of 42 U.S.C. § 2000e(b), *et seq.*

13.     BNSF Railway Company ("BNSF") is a corporation incorporated in the state of Delaware.

14.     At all relevant times, BNSF conducted business in the state of Arizona.

15.     At all relevant times herein, BNSF was the "employer" of Matthew within the meaning of 42 U.S.C. § 2000e(b), *et seq.*

16.     At all relevant times, BNSF has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**Allegations**

17.     Plaintiff Matthew Thomas ("Matthew) was employed by Defendant BNSF Railway Company ("BNSF") from April 29, 2013, to September 29, 2020.[1]

---

[1] Matthew received two separate "Dismissal" notices from BNSF, both alleging to terminate his employment based on an investigation held September 3, 2020 (however offering contradicting dates of dismissal).  One notice was dated September 22, 2020, and alleged termination for issues including "duty reporting or absence" and "ready to work expectations."  Interestingly, the second notice was dated September 29, 2020, and contradicted the first, alleging completely different and altogether unrelated supposed safety violations as reason for dismissal.

18.     BNSF was aware that Plaintiff suffered from disabilities including Alcoholism and Anxiety Disorder.

19.     BNSF Road Forman Bruce McClellan ("McClellan") worked with Matthew prior to and after his first unlawful termination by BNSF.

20.     McClellan was fully aware of Matthew's disabilities, even suggesting that Matthew wear "rose colored glasses" because McClellan believed it could help with Matthew's anxiety disorder.

21.     Despite this knowledge, BNSF first terminated Matthew's employment for taking medical leave due to his disability in 2016.

22.     On November 18, 2018, an arbitration hearing was held in Chicago, Illinois to address BNSF's workplace mistreatment and wrongful termination of Matthew's employment.

23.     The Arbitrator ruled in Matthew's favor and ordered BNSF to return Matthew to work with his seniority unimpaired, and to do so within 30 days of the ruling.

24.     Upon receiving the order, Matthew quickly completed all requirements to return to work, including hearing, vision, and drug screening.

25.     He completed a physical, computer and instructor led trainings, and passed an exam with approximately eight hundred questions.

26.     BNSF stated in his return paperwork that Matthew must contract BNSF Phoenix Superintendent Jeff Costello ("Costello") to get a return-to-work date.

27.     Matthew reached out to Costello several times and never received a return call.

28.     Upon information and belief, BNSF took zero steps to return Matthew to work within 30 days as required by the Arbitrator's order.

29.     Matthew was not returned to work within 30 days and BNSF's lack of compliance with the Arbitration order was willful and wanton actions in discrimination against Matthew.

30.     BNSF finally allowed Matthew to return to work on January 26, 2019—weeks after the deadline set by the Arbitrator to restore him to his position.

31.     BNSF intensified the mistreatment against Matthew once he returned to work.

32.     BNSF harassed Matthew by subjecting him to continuous unwarranted scrutiny and investigation.

33.     For instance, on or about August 6, 2019, Matthew and two other BNSF employees were scheduled to work on train wphxphx06-1b and to pick up a train in Wittman, Arizona.

34.     Trainmaster Jason Wade ("Wade") accused Matthew of arriving late.

35.     Plaintiff explained that Wade's statement was incorrect in accordance with the general notice, and Matthew was not late.

36.     Wade unreasonably became enraged and yelled at Matthew, "Don't point your fucking finger at me!"

37.     Matthew later reported this incident to BNSF Human Resources with the names of all who witnessed the event.

38.     In retaliation for the altercation, Wade directed Plaintiff to take his train without further instruction.

39.     When Matthew arrived at his destination in Alhambra, Wade instructed him to "run around the train and air test it." Matthew performed all tests and duties per rule ABTH 103.3 B.

40.     At approximately the same time, McClellan and BNSF employee Ben Strot ("Strot") approached Matthew and McClellan asked Matthew where his gauge was.

41.     Matthew found this question odd, as Matthew was going to be hanging an E.T.D. and the question seemed out of place.

42.     Matthew told McClellan that he didn't have his gauge on him and that he may have dropped it on the way-although he wasn't sure.

43.     McClellan told Matthew he was giving him an operations test failure for "improper air test."

44.     Matthew protested asking how he could be failed for something he had yet to complete, but McClellan did not yield and stated he was required to fail Matthew because Mr. Strot was present.

45.     Matthew expressed his concern that he did not feel safe continuing to work his shift, and that he believed Wade was targeting him and creating a hostile work environment.

46.     McClellan instructed Matthew to keep working despite his assertion that he did not feel safe at work.

47.     BNSF also harassed Matthew by wrongfully withholding his pay, removing his seniority in violation of the Arbitrator's order, and by subjecting Matthew to an illegal drug test.

48.     BNSF was clearly aware of Matthew's disabilities prior to termination—in fact it was ordered by an Arbitrator to reinstate Matthew after wrongfully firing him once before based on his disabilities.

49.     BNSF violated the ADA when it subjected Matthew to a hostile work environment based on his disabilities and need for reasonable accommodation, BNSF also violated the ADA when it terminated Matthew based on his disabilities.

50.     Upon information and belief, no other non-disabled employee was held to the same fleeting and ever-changing job expectations, requirements, and subjective performance expectations as Matthew.

51.     Matthew has been subjected to retaliation, disparate treatment, and discrimination by BNSF because of his disabilities.

52.     Matthew has been denied benefits and privileges of his employment because of his disabilities.

53.     BNSF also targeted Matthew for mistreatment—and ultimately terminated his employment—based on his speaking up about violations of the Federal Railroad Safety Act.

54.     For instance, on July 13, 2020, Matthew reported to the Federal Railroad Administration ("FRA") concerns about BNSF's violations of FRA rules regarding his hours of service.

55.     BNSF was aware of this reporting and increased its harassment of Matthew thereafter.

56.     On July 25, 2020, Matthew and another conductor were assigned to take a key train from Winslow, Arizona, to Phoenix, Arizona.

57.     Matthew and his co-conductor agreed the key train was unsafe to transport due to its inoperative dynamic brakes and excessive tonnage.

58.     Despite bringing up their safety reservations, Matthew's supervisor Bryson told Matthew he was required to transport the train or face termination of his employment.

59.     Bryson initiated the key train documents, signifying that he understood that Matthew and his co-conductor were taking the train under protest.  Before reaching Phoenix, the train suffered a derailment.

60.     Matthew was taken out of service pending investigation; however, the co-conductor was not taken out of service.

61.     The following day, on July 26, 2020, Matthew and coworkers filed a complaint of a hostile work environment with the BNSF Human Resources Department.

62.     On September 22, 2020, BNSF sent a dismissal notice to Matthew to terminate his employment based on an alleged work refusal on July 13, 2020.

63.     Matthew did not refuse work and believes this was targeted harassment based on his whistleblowing.

64.     One-week later September 29, 2020, BNSF sent a second, separate dismissal notice to Matthew now alleging to terminate his employment due to safety violations related to the July 25, 2020, derailment.

65.     This also is a pretextual cause for dismissal as Matthew reported the safety concerns with the key train prior to the derailment on July 25, 2020, and was ordered by BNSF to proceed with the unsafe train anyways, despite his reports of safety concerns.

**Count One**
**(Violation of the Federal Railroad Safety Act)**

66.     Matthew realleges the preceding allegations.

67.     Under the FRSA, a railroad carrier is prohibited from retaliating against an employee who has, in good faith, engaged in a protected activity.[2]

68.     To establish a prima facie case under the FRSA, an employee must prove that (1) he engaged in protected activity; (2) the employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action.

69.     Once the employee satisfies the initial burden, the employer must demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected behavior."[3]

---

[2] 49 U.S.C. § 2019(a).
[3] 29 U.S.C. § 1982.109(a).

70.     Here, Matthew engaged in protected activity on July 13, 2020, when Matthew reported to the FRA concerns about BNSF's violations of FRA rules regarding his hours of service.

71.     Matthew again engaged in protected activity on July 25, 2020, when he and his co-conductor spoke up about the safety issues with the key train.  Matthew was told to take the train as is or to face dismissal by BNSF.

72.     Matthew again engaged in protected activity on July 26, 2020, when he and his coworkers spoke up about the mistreatment they were experiencing from BNSF.

73.     BNSF was aware of each of these protected activities and in each instance intentionally targeted Matthew for mistreatment.

74.     Matthew suffered almost immediate unfavorable personnel action when BNSF pulled him from service pending its "investigation" and then ultimately terminated his employment.

75.     Among other indicators, the proximity of time between Matthew's protected activities and the mistreatment by BNSF, as well as the absence of mistreatment of his co-conductor and comparator, makes it clear that Matthew's protected activity led to his dismissal.

## Count Two
### (Violation of the Americans with Disabilities Act)

76.     Matthew realleges the preceding allegations.

77.     An employer is prohibited from discriminating against a qualified individual with a disability in all phases of employment, including termination of employment.[4]

---

[4] *See* 42 U.S.C. § 12112 (a)-(c).

78.     To establish a prima facie case under the ADA, an employee must prove: (1) that he or she is a disabled person within the meaning of the ADA; (2) that he or she is qualified, that is, with or without reasonable accommodation, which he or she must describe, he or she is able to perform the essential functions of the job; and (3) that the employee has suffered adverse employment action because of the disability.[5]

79.     An Employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations, which it failed to do.[6]

80.     BNSF was forced to return Matthew to work by an Arbitrator in January 2019, and since that time BNSF has continued to engage in unlawful employment practices at its Maricopa County, Arizona, facility, in violation of Section 102 of Title I and in violation of Title V of the ADA, 42 U.S.C. § 12112(a).

81.     These unlawful employment practices against Matthew include but are not limited to the following:

A.  Wrongfully withholding Matthew's pay as harassment.

B.  Removing Matthew's engineer seniority in violation of the Arbitrator's order as harassment.

C.  Subjecting Matthew to an illegal drug test as harassment.

D.  Subjecting Matthew to extreme scrutiny and unwarranted investigations as ongoing harassment.

---

[5] Americans with Disabilities Act of 1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.*
[6] *See Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001); *Barnett v. U.S. Air,* 228 F.3d 1105, 1114 (9th Cir. 2000).

82.     These acts of discrimination affected Matthew in the terms, conditions, and privileges of his employment.

83.     The effect of these practices has been to deprive Matthew of equal employment opportunities and otherwise adversely affect his status as an employee.

84.     These acts were carried out by the employer, against Matthew, because of Matthew's disability.

85.     The unlawful employment practices complained of above were intentional.

86.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Matthew.

87.     By acting as aforedescribed, BNSF acted with malice or with reckless disregard for Matthew's rights, causing Matthew damage—including the loss of his employment—and entitling Matthew to damages in an amount to be proven at trial.

88.     Matthew is entitled to an award of reasonable attorney's fees under Title V, Section 505, of the ADA, 42 U.S.C. § 12101 *et seq.*

### Prayer for Relief

WHEREFORE, Matthew prays that this Court enter judgment against BNSF as follows:

- Payment to Plaintiff of an amount to be determined at trial, or a different amount which may result during the proceedings, for direct and consequential damages as a result of Defendant's violation of 49 U.S.C. §20109; and the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

- Payment to Plaintiff, an amount to be determined at trial, or a different amount which may result during the proceedings, in punitive damages for the violation, pursuant to 49 U.S.C. § 20109(e)(3);

- In addition, payment to Plaintiff for any other damages which may result during the proceedings;

- Reasonable attorney's fees and costs pursuant to Title V, Section 505, of the ADA and 49 U.S.C. § 20109(e); and

- Costs of suit pursuant to the 49 U.S.C. § 20109(e) and such other relief as the Court deems just and proper.

## Jury Demand

Matthew respectfully demands a jury on all claims stated herein.

**DATED** this 10th day of November 2021.

*Law Office of Joshua Black, PLC*

By:   /s/ *Joshua C. Black*
_____.
Joshua C. Black
2999 North 44th Street, Suite 308
Phoenix, AZ 85018
*Attorneys for Plaintiff*

-12-